[Cite as *In re Guardianship of Markle*, 2023-Ohio-1271.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF

    THE GUARDIANSHIP OF

    JOHN K. MARKLE

    Respondent-Appellant

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. John W. Wise, J.
Hon. Andrew J. King, J.

Case No. 2022 AP 07 0019

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Probate Division, Case No. 2018 GD 16815 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | April 18, 2023 |

APPEARANCES:

For Appellee

KRISTINE W. BEARD
125 East High Avenue
New Philadelphia, Ohio 44663

Guardian ad Litem

PAUL HERVEY
4700 Dressler Avenue, NW
Canton, Ohio 44718

For Appellant

MARK A. PERLAKY
120 N. Broadway
New Philadelphia, Ohio 44663

*Wise, J.*

**{¶1}** Appellant, John K. Markle, appeals from the July 6, 2022, Judgment Entry by the Tuscarawas County Court of Common Pleas. Appellee is the Tuscarawas County Probate Court. The relevant facts leading to this appeal are as follows.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** In 2012, Appellant was committed to inpatient treatment by the Summit County Probate Court. Appellant was described as acutely psychotic, unable to adhere to outpatient treatment, out of touch with reality, exhibiting poor insight and judgment, and a substantial risk of harm to himself and others. Later in 2012, he stabilized and was discharged.

**{¶3}** In 2015, an application for guardianship was filed in Tuscarawas County. Appellant was institutionalized after a psychotic break. The request for guardianship was granted.

**{¶4}** Appellant was detained at Heartland. Appellant had a long history of delusions and hallucinations including delusions of being a wizard with magical powers. While at Heartland, Appellant followed through with his medication and stabilized. On December 12, 2016, Appellant's guardianship was terminated.

**{¶5}** In 2018, Appellant had another psychotic break. He attempted suicide multiple times by attempting to hang himself and jump in front of a moving vehicle. Appellant's parents filed an application for emergency guardianship. Instead of medication, Appellant had been taking herbs to treat his mental health. He had to be given forced injections of his medicine to treat his schizophrenia. He remained non-compliant through November of 2018.

{¶6}   On April 11, 2019, an expert completed an evaluation of Appellant. The evaluation found Appellant had poor insight and was not complying with treatment.

{¶7}   On April 23, 2019, Appellant convinced the court to allow him to return to independent living.

{¶8}   By May of 2019, Appellant was being exploited by transient friends he allowed to live in his apartment. His home was infested with cockroaches and bedbugs, and he was about to be evicted. Appellant again refused to take medication. Appellant was then admitted to Sprenger Health Center.

{¶9}   Appellant has since filed several motions to terminate his guardianship. The requests were denied and Appellant remained at Sprenger.

{¶10}  On February 14, 2022, Dr. Royak conducted a competency evaluation of Appellant. Dr. Royak found Appellant was competent and no longer needed to be under the court's guardianship.

{¶11}  On February 15, 2022, Appellant filed his annual report, a statement of expert evaluation, a supplemental guardian report, and a letter mailed by the guardian to Appellant.

{¶12}  On March 9, 2022, the trial court held a termination of guardianship hearing before a magistrate.

{¶13}  At the hearing, Appellant's guardian pointed out that Appellant was doing well, and the evaluating doctor indicated the guardianship was no longer necessary. The trial court expressed its concern about terminating the guardianship, that Appellant would stop taking his medication. The trial court also noted that no expert report was admitted into evidence recommending the guardianship continue.

**{¶14}** Dr. Royak testified that at the time of his evaluation, Appellant could look after himself and manage his day-to-day affairs. Dr. Royak believed Appellant was competent when he performed the evaluation.

**{¶15}** Appellant then testified that he lived at Sprenger Healthcare for the past year. He understood his diagnosis as schizophrenia and bipolar disorder, but could only name some of the medications he was taking. His guardian and an employee from Sprenger provided information about the rest of his medication.

**{¶16}** Appellant expressed his interest in the guardianship ending. He noted he wanted to be freer, to come and go when he wanted and not be locked into the facility. He wished to see his friends more, but would not be returning to New Philadelphia where he had trouble with some friends. He disclosed his income and expenses for each month. He wished to finish schooling and indicated that he was well enough to get back on his feet.

**{¶17}** Next, Appellant's parents testified that Appellant was looking and acting better than he ever had previously. They see him more often and know he is currently safe as he is. His mother is worried that it would be unsafe for Appellant to live in the Canton area, and that he would return to his past activities which resulted in multiple hospitalizations.

**{¶18}** On March 14, 2022, the Magistrate issued a decision recommending that the guardianship of Appellant continue indefinitely.

**{¶19}** On March 25, 2022, Appellant filed an Objection to the Magistrate's Decision.

**{¶20}** On June 27, 2022, the trial court held an objection hearing. At the objection hearing, Dr. Royak testified again. He said in February of 2022 during their meeting, Appellant was competent and could look after himself. He said he could not opine upon Appellant's current state.

**{¶21}** On July 6, 2022, the trial court overruled Appellant's Objection to the Magistrate's Decision.

## ASSIGNMENTS OF ERROR

**{¶22}** Appellant filed a notice of appeal and herein raises the following Assignment of Error:

**{¶23}** "I. THE TRIAL COURT ERRED IN DENYING TERMINATION OF THE APPELLANT'S GUARDIANSHIP OF HIS PERSON AND ESTATE."

## I.

**{¶24}** Appellant argues the trial court erred in denying Appellant's request to terminate his court-ordered guardianship. We disagree.

**{¶25}** Ohio law presumes that once an individual is found to be incompetent, he or she remains incompetent, but this presumption is rebuttable. *In re Guardianship of Pinkney* 8th Dist. Cuyahoga No. 102577, 2015-Ohio-2709, ¶8, citing *In re Guardianship of Michael*, 10th Dist. Franklin No. 07AP-264, 2007-Ohio-5967.

**{¶26}** A guardianship must be terminated upon "satisfactory proof" that the necessity for the guardianship no longer exists. R.C. §2111.47. "Satisfactory proof" to rebut the presumption of continued incompetence has been offered as that which "causes the presumption to disappear," or "counterbalances the presumption," or "leaves the case

in equipoise." *Michael* at ¶6, quoting *In re Guardianship of Breece*, 173 Ohio St. 542, 184 N.E.2d 386 (1962).

**{¶27}** As an appellate court we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact-finder could base its judgment. *Cross Truck Equip. Co. v. Joseph A. Jeffries Co.*, 5th Dist. Stark No. CA5758, 1982 WL 2911 (February 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶28}** On a review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also*, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

**{¶29}** In weighing evidence, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and

judgment." *Eastley* at ¶21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Therefore, an appellate court will defer to the finder of fact on issues of weight and credibility of evidence, as long as a rational basis exists in the record for its decision. *State v. Ricer*, 5th Dist. Ashland No. 17-COA-023, 2018-Ohio-426, 106 N.E.3d 819, ¶12.

{¶30} In support of the termination of guardianship, Appellant argues the facts in *In re Bolander*, 88 Ohio App.3d 498, 504, 624 N.E.2d 322, 325 (11th Dist.1993) are very close to the facts of this case. In *Bolander*, a woman filed for termination of her guardianship. The trial court did not grant the termination of guardianship, and Bolander appealed. Bolander submitted an expert report based upon two meetings. The report found that Bolander had no impairments in intellectual functioning of sufficient severity to warrant a diagnosis of dementia, and that she had sufficient mental capabilities to handle her day-to-day affairs. No other evidence was submitted. The Eleventh District Court of Appeals found the trial court had erred in denying the guardianship's termination, as the only evidence presented was an expert report, based upon multiple meetings, disputing the diagnosis and finding Bolander was capable of managing her day-to-day affairs.

{¶31} In contrast to *Bolander*, the Twelfth District Court of Appeals found in *In Matter of Guardianship of Smead*, 12th Dist. Warren No. CA96-07-067, 1997 WL 50144, that the trial court did not err in refusing to terminate the guardianship in May of 1996. At the termination hearing, Smead produced an expert report stating that she was competent in December of 1995 when examined one time. The expert said he no longer knew of Smead's present condition. However, the Twelfth District noted this report was only one

factor the trial court considered at hearing in May of 1995 when they affirmed the trial court's decision not to terminate Smead's guardianship.

{¶32} Similar to *Smead*, in the case *sub judice*, Appellant submitted the testimony of Dr. Royak, whom after one meeting determined Appellant was capable of managing his finances and property, his condition had stabilized, and that the guardianship should be terminated. However, four months later, Dr. Royak stated he was unable to provide a definitive answer on Appellant's current state, only his opinion as to the February 14, 2022, meeting. Dr. Royak could not recall details from the meeting, how long he met with Appellant, or where he met with Appellant. The trial court found Dr. Royak's testimony not to be persuasive.

{¶33} Also, the trial court noted Appellant has a lengthy history of guardianships, releases and relapses. While on the stand Appellant was unable to tell the court all of the medications he had to take and dosages. He had to ask assistance from his guardian and an employee of Sprenger Healthcare. Appellant did not have an accurate accounting of cost of living as his plan was to make $800 a month, spend $400 on rent and $70 on internet. He did not know the costs of groceries, utilities, or home furnishings.

{¶34} Appellant's parents also testified at trial in support of continued guardianship. They said this is the best he has ever behaved. That under the court's supervision Appellant has been clean and compliant with medication. When not under a guardianship, Appellant has frequently stopped medication, had psychological breaks, and each time becomes more difficult for Appellant to accept treatment.

{¶35} Therefore, upon review of the entire record, we conclude the trial court did not clearly lose its way and create such a manifest miscarriage of justice that the decision

must be reversed. The trial court's determination that Appellant requires a guardian is not against the manifest weight of the evidence.

{¶36} Accordingly, Appellant's sole Assignment of Error is overruled.

{¶37} For the foregoing reasons, the judgment of the Court of Common Pleas, Probate Division, Tuscarawas County, Ohio, is hereby affirmed.


By: Wise, J.

Gwin, P. J., concurs.

King, J., dissents.


JWW/br  0404

*King, J., dissents,*

{¶ 38} I respectfully dissent from the majority's opinion to uphold the probate court's decision to continue the guardianship. I do not believe the possibility that a ward may return to incompetency is sufficient to overcome all the evidence here that the ward is presently competent. Therefore, the probate court erred by not terminating the guardianship.

{¶ 39} Before getting to the merits, there is a potential question whether the probate court's appearance as appellee was appropriate here. Not only was the probate court a non-party below, but it now assumes a directly adversarial position to the ward. This invites question of whether this is appropriate under the appellate rules and R.C. Chapter 2111. For example, there are issues of how R.C. 2111.01 and R.C. 2111.50 should be interpreted together whenever the probate court acts as the "superior guardian," and whether that authority includes appearing as a party. This action also leads to question whether the trial court can continue to act as a neutral non-party after assuming an adversarial position. But the appellant did not raise this issue so this court appropriately did not address it.

{¶ 40} As set forth in the majority opinion, once a ward has been found incompetent, there is a presumption the incompetency remains. But the Supreme Court of Ohio has noted this presumption disappears when evidence equal to or greater than that presumption is presented. *In re Guardianship of Breece,* 173 Ohio St. 542, 555, 184 N.E.2d (1962). Because both the quantity and quality of evidence presented are sufficient to overcome that presumption, the analysis here revolves around whether, under R.C.

2111.47, appellant presented "satisfactory proof that the necessity for the guardianship no longer exists[.]" I believe that evidence was indeed produced.

{¶ 41} First, the only expert here testified the ward was no longer incompetent; there is no contrary expert testimony. Regarding the probate court's evaluation of the expert testimony, the probate court appeared to discount that conclusion because largely Dr. Royak's memory had dimmed in the four months since his evaluation of Markle. The probate court's delay in scheduling the hearing to receive the expert's testimony cannot be used to create a credibility issue adverse to the ward.

{¶ 42} Moreover, the probate court appeared to additionally discount Dr. Royak's testimony because he could not speak to the ward's present state because, again, the hearing was held four months after his evaluation. In both cases, the delay between the evaluation and the hearing was held against the ward. Yet, the ward had no ability to expedite the hearing. In my view, the basis for finding Dr. Royak not credible was artificially created and not truly substantive. Accordingly, it was improper to discount his testimony.

{¶ 43} Second, the guardian, like Dr. Royak, recommended that the guardianship be terminated. The guardian also informed the court that Markle was doing fantastic. Further, the majority opinion notes Markle's parents stated this is the best he has ever behaved. The sum of the witness testimony supported the conclusion that guardianship was no longer necessary. In the absence of contrary evidence about the ward's present state, this ordinarily represents satisfactory proof under R.C. 2111.47.

{¶ 44} In opposition to all this evidence that the guardianship of Markle was no longer necessary, was the probate court's observation about Markle's repeated failures to live independently. The probate court states this as follows:

The pattern is consistent: John gets hospitalized or institutionalized, he gets proper nutrition and most importantly his proper medications, and he 'gets better.' He then is released, he stops taking his medications and falls back into manic/psychotic behaviors, which often result in criminal charges being filed against him. Contemporaneously, his housing situations quickly spiral downward, becoming filthy and unsafe, even when home health aides are hired to assist.

{¶ 45} It is noteworthy the probate court acknowledges that Markle 'gets better' with medication and proper nutrition. Whenever Markle got 'better' the prior guardianships were terminated, but not this time. So, in essence, the probate court continued the guardianship here to ensure compliance with his prescribed diet and medications. In my view, this reason alone is insufficient to continue the guardianship here.

{¶ 46} Understandably, the probate court was concerned ending the fourth guardianship will inevitably lead to a fifth guardianship. But it remains speculation that those situations will repeat themselves, let alone that Markle will cease taking his medications. Aside from his past failures, the only apparent evidence that Markle will fail to sustain his medication regime was that he could not recall the names of his medications or his dosages. This by itself is not unusual for people taking many medications, and it

certainly does not indicate he will cease taking them. In my view, there needed to be evidence that presently, Markle cannot sustain his medication regime which will result in the symptoms returning that made the guardianship necessary to begin with.

{¶ 47} Moreover, I question whether the facts before us support a finding that Markle is presently incompetent as defined by R.C. 2111.01. So, if this were a determination in the first instance, I doubt there is clear and convincing evidence under the present circumstances here to impose a guardianship under R.C. 2111.02. This is because the sole reason for guardianship ultimately returns to speculation about future noncompliance and thus future incompetency. Even assuming the General Assembly intended the standard for continuing the guardianship be lower than imposing it initially, I conclude Markle met the standard under R.C. 2111.47 to terminate it.

{¶ 48} I think it is also important to note the reasoning here, employed against the facts presented, likely results in the guardianship never being terminated. This is contrary to the scheme established by the General Assembly. In situations like this, where medication can seemingly restore an individual to competency, the legislature plainly provided a way for the guardianship to terminate. The facts here support a finding that Markle has returned to competency. When those facts exist, the language of the statute is mandatory in effect, i.e., the probate court shall terminate guardianship in such a case.

{¶ 49} Reading a "three strikes and you're out" rule into this statutory scheme is beyond the authority of the judiciary and I therefore dissent.